UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE R. CHANEY,

Petitioner,

v.                                                          Case No. 24-cv-0930-bhl

WARDEN BRIAN CAHAK,

Respondent.

## ORDER DENYING §2254 HABEAS PETITION

In 2017, a Milwaukee County jury found Petitioner Dwayne R. Chaney guilty of first degree intentional homicide with the use of a dangerous weapon and possession of a firearm after being adjudicated delinquent. The trial court sentenced Chaney to life in prison without eligibility for release to extended supervision on the intentional homicide count and five years of initial confinement and five years of extended supervision, consecutive to any other sentences, on the firearm count. In postconviction proceedings and on direct appeal, Chaney contended that his Sixth Amendment rights were violated because he was not allowed to retain counsel of his choice and his trial counsel was ineffective. After Chaney's conviction was affirmed, he filed a petition for writ of habeas corpus in this Court, invoking 28 U.S.C. §2254. Because Chaney has not established that he is entitled to habeas relief, his petition will be denied.

## BACKGROUND[1]

The State of Wisconsin charged Chaney with first degree intentional homicide with the use of a dangerous weapon and possession of a firearm after being adjudicated delinquent. (ECF No. 7-3 ¶2.) The State alleged that, on November 10, 2015, Chaney shot Michael Prescott, the boyfriend of Chaney's former girlfriend, C.H. (*Id.*) At the time of the shooting, Prescott was warming up C.H.'s car and C.H. was standing in the doorway of her residence when Chaney ran

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals' decision affirming Chaney's conviction. (ECF No. 7-3.)

up to the driver's side and shot Prescott. (*Id.*) After the shooting, Chaney followed C.H. into her residence and struck her in the head while yelling that it was her fault and that he would go to jail for the rest of his life. (*Id.*) Chaney then fled the residence. (*Id.*)

Chaney's trial was scheduled to begin Monday, October 16, 2017. (*Id.* ¶3.) At the final pretrial conference on the preceding Friday, however, Chaney's counsel informed the court that Chaney wanted to fire him. (*Id.* ¶4.) In response to the judge's questions, Chaney explained that he felt like his counsel "don't represent me, like, lack of communication, incidents when counsel and I talk, like, [counsel] is not there." (*Id.*) Chaney further indicated that whenever he asked his counsel to do something, his counsel "brushe[d] it off" and that he did not feel comfortable. (*Id.*) In response, the judge explained that Chaney had the right to an effective attorney but not necessarily the attorney of his choice, or even an attorney that Chaney liked or got along with. (*Id.*) Because trial was set to begin the following Monday, the court further indicated it would only allow Chaney to change counsel if his current counsel had a conflict prohibiting him from representing Chaney or there was some other information suggesting that counsel was not being effective. (*Id.*) After determining that neither circumstance was present, the judge denied Chaney's request. (*Id.*)

The matter continued to trial the following week. (*Id.* ¶5.) C.H. testified but recanted her prior statement to police, telling the jury that she saw an armed man whom she did not recognize shoot the victim. (*Id.*) She admitted that the man followed her into her home but denied that she engaged in a physical struggle with the shooter or that he had said anything to her. (*Id.*) She also admitted sending a text on the day prior to trial in which she indicated she would not "testify against [Chaney] . . . and make him get life in prison without him ever seeing [his daughter] again." (*Id.*)

Other witnesses supported the state's case. Detective Luke O'Day testified about his interview of C.H. shortly after the shooting, during which she identified Chaney as the shooter and provided other details aligning with the State's charges. (*Id.* ¶6.) C.H.'s stepfather testified and described how C.H. called him on the day of the shooting and told him that Chaney had shot Prescott. (*Id.* ¶7.) During the testimony of Detective Michael Walisiewicz, the government played a recording of the post-shooting 911 call and the detective testified that he could hear a male saying "something along the line of 'I'm going to jail for the rest of my life.'" (*Id.* ¶8.) In the recording, a female voice can be heard saying, "Oh my God, Wayne," a name C.H. occasionally used to refer

to Chaney.  (*Id.* ¶9 n.1.)  Chaney's employer testified that Chaney did not come to work the day after the shooting and did not collect his final paycheck.  (*Id.* ¶9.)  A detective with the Milwaukee County Sheriff's Office testified that Chaney was found and arrested eighteen months after the shooting.  (*Id.*)

At the end of the testimony, the jury found Chaney guilty on both counts.  (*Id.* ¶10.)  The trial court later imposed a sentence of life in prison without eligibility for release to extended supervision on the intentional homicide count and five years of initial confinement and five years of extended supervision, consecutive to any other sentences, on the firearm count.  (*Id.*)

Chaney moved for postconviction relief on two grounds.  (*Id.* ¶11.)  First, he argued that he was denied the right to counsel of his choice when the trial court did not allow him to fire his attorney on the Friday before trial.  (*Id.*)  Second, he claimed his trial counsel was constitutionally ineffective in three different ways, by failing to: (1) present evidence of C.H.'s motive to lie in 2015 when she identified Chaney as the shooter; (2) object to hearsay from a non-testifying declarant identifying him as the shooter; and (3) object to or request a cautionary instruction concerning Walisiewicz's testimony related to the 911 recording.  (*Id.*)

The postconviction court denied the ineffective assistance of counsel claim without an evidentiary hearing, concluding that any deficient performance did not prejudice Chaney.  (*Id.*)  But the court granted Chaney a retrospective hearing under *State v. Lomax*, 432 N.W.2d 89 (1988) on whether he was denied the right to his chosen counsel.  (*Id.*)

At the hearing, the court heard testimony from Chaney, his aunt, trial counsel, and Ben Peirce, the attorney who Chaney claimed had agreed to take over his case in place of appointed counsel.  (*Id.* ¶12.)  Chaney testified that he wanted to fire his trial counsel in June or July of 2017, but that he did not try to do so until the Friday before his trial was set to start.  (*Id.* ¶17.)  He maintained that by that time he had found an attorney, Ben Peirce, who had agreed to take the case if the judge gave a continuance.  (*Id.*)  Trial counsel testified that he had received an email from Peirce, stating, "Yikes.  I have no interest or desire to take this case."  (*Id.* ¶18.)  Trial counsel further testified that he knew that Chaney's statement to him that Peirce was taking the case was not true.  (*Id.*)  Peirce testified that Chaney had contacted him on October 9, 2017 but that he had not agreed to take the case.  (*Id.* ¶19.)  He also testified that he had never handled a homicide case and did not "know why Mr. Chaney would have thought that I would have taken his case."  (*Id.*)  Based on this testimony, the postconviction court denied Chaney's motion, finding that Chaney

had improperly raised the issue of replacing counsel with the intent to delay his trial and to remain out of custody. (*Id.* ¶12.)

The Court of Appeals affirmed the postconviction court's ruling, concluding that the lower court had correctly applied *Lomax* and properly exercised its discretion in rejecting Chaney's right to chosen counsel claim. (*Id.* ¶20.) It further agreed that the record supported the postconviction court's determination that Chaney had intended to delay trial and that Chaney's assertion that another attorney was available was without support. (*Id.*) With respect to Chaney's ineffective assistance of counsel claim, the Wisconsin Court of Appeals agreed that Chaney's postconviction motion did not allege sufficient facts to warrant an evidentiary hearing. (*Id.* ¶22.) It explained that even if Chaney's complaints about counsel's performance rose to the level of legitimate deficiencies, none of the alleged errors could have prejudiced his case. (*Id.* ¶24.) The Wisconsin Court of Appeals pointed to the "overwhelming evidence of Chaney's guilt," including the testimony from C.H.'s stepfather, the 911 recording, Detective O'Day's testimony about C.H.'s interview, and C.H.'s text messages from the day before trial. (*Id.*)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

On habeas, Chaney insists that the Wisconsin Court of Appeals incorrectly rejected his claims that: (1) the trial court had denied his choice of counsel in violation of the Sixth Amendment; and (2) his trial counsel was ineffective for failing to present evidence of a witness's motive to lie, failing to object to hearsay testimony, and failing to object to improper lay opinion testimony. (ECF No. 1 at 2.) Neither ground supports habeas relief. Under AEDPA, Chaney is required to show that no fair-minded jurist would conclude that the Wisconsin Court of Appeals' decision was consistent with the applicable United States Supreme Court precedent. *See Harrington*, 562 U.S. at 102. Because Chaney failed to make this showing on either ground, his petition will be denied.

**I. The State Court Did Not Contravene Federal Law in Concluding the Trial Court Properly Exercised Its Discretion in Denying Chaney's Request to Substitute Counsel.**

Chaney first argues that the Wisconsin Court of Appeals ruled contrary to federal law because it impermissibly asked whether the lower court appropriately exercised its discretion and not whether his constitutional rights were violated. (ECF No. 8 at 8.) Chaney's argument is not consistent with established principles of federal law.

The Sixth Amendment entitles a criminal defendant to retain counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But this right is not without qualification; a

defendant's right to choose counsel is balanced against the need to ensure the fair and efficient administration of justice. *Id.* at 151–52; *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir. 1986). Because a defendant's right to counsel is "one of constitutional dignity," when a trial court is faced with a request to adjourn trial to allow a defendant the ability to retain counsel of his choice, the court must start with "a presumption in favor of a defendant's counsel of choice." *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008); *United States v. Santos*, 201 F.3d 953, 959 (7th Cir. 2000). The Sixth Amendment does not, however, permit a defendant to delay the progress of his case by asking to secure retained counsel at any time. *Kleba*, 796 F.2d at 952. When a continuance motion is based on a defendant's invocation of his right to retain counsel of choice, the trial court has "broad discretion" to grant or deny the motion. *United States v. Sinclair*, 770 F.3d 1148, 1150 (7th Cir. 2014).

Chaney's request for new counsel was made the Friday before his trial was to begin and would therefore also have necessitated a continuance. (ECF No. 7-3 ¶4.) In this circumstance, the trial court had discretion to grant or deny the request. *See Sinclair*, 770 F.3d at 1150. The Wisconsin Court of Appeals cited state law to support its review for an abuse of discretion, but the standard is the same under federal law. (*See* ECF No. 7-3 ¶15); *see also Sinclair*, 770 F.3d at 1150. Accordingly, Chaney is wrong in suggesting that the state court's review for an abuse of discretion was contrary to federal law. *See Bell*, 535 U.S. at 694.

Chaney also takes issue with the factual findings of the state court, insisting that he was "legitimately attempting to retain other counsel" and that the trial court never asked how long of a continuance he needed. (ECF No. 8 at 9.) But this Court presumes the state court's factual findings are correct, 28 U.S.C. §2254(e)(1), and it is Chaney's burden to rebut that presumption by "clear and convincing evidence," *id.* He has not done so. The state court found that Chaney's attempt to switch counsel was to delay trial and stay out of custody. (ECF No. 7-3 ¶20.) The testimony introduced in the postconviction court amply supports that finding and Chaney has not rebutted this factual finding by clear and convincing evidence. Taking this fact as true, Chaney cannot now invoke his Sixth Amendment right to retain counsel and his claim therefore fails. *See Kleba*, 796 F.2d at 952.

**II.** **The Wisconsin Court of Appeals Did Not Unreasonably Apply *Strickland* In Concluding Chaney Was Not Prejudiced by Counsel's Allegedly Deficient Performance.**

Chaney's claim for ineffective assistance of trial counsel also fails to warrant habeas relief. The controlling Supreme Court precedent for an ineffective-assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, *Strickland* requires Chaney to establish both (1) deficient performance by his counsel and (2) prejudice. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). This burden requires Chaney to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *See Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Chaney must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). In assessing prejudice, the Sixth Amendment requires that "the prejudice inquiry focus[es] on the cumulative effect of trial counsel's shortcomings." *Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020) (citing *Strickland*, 466 U.S. at 695). A court need not address both components; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

In this case, the Wisconsin Court of Appeals correctly applied *Strickland*'s two-part test for evaluating claims of ineffective assistance of counsel. (ECF No. 7-3 ¶23.) The appellate court identified both parts of the test, noting that Chaney had to "prove both deficient performance and prejudice." (*Id.* (citing *Strickland*, 466 U.S. at 687).) The appellate court also explained that *Strickland*'s prejudice prong required Chaney to show that "counsel's errors were so serious as to deprive the defendant of a fair trial and a reliable outcome." (*Id.* (citing *Strickland*, 466 U.S. at 687).) And, although citing state law, the state court correctly noted the cumulative prejudice standard requires considering the effect of multiple deficiencies. (*Id.* ¶24 (citing *State v. Thiel*, 665 N.W.2d 305, 321 (Wis. 2003)).) The appellate court then assumed, "without deciding," that

Chaney's complaints constituted legitimate deficiencies in trial counsel's performance but concluded that, even considering the cumulation of the deficiencies, Chaney experienced no prejudice due to the overwhelming evidence against him. (*Id.*)

Because the state court applied the appropriate rule from *Strickland*, this Court applies an even higher standard of habeas deference. As the United States Supreme Court has emphasized:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in the United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of §2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (citation omitted). Thus, "[s]urmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Id.* at 105 (citations omitted) ("The standards created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."); *see also Woods*, 575 U.S. at 316–17 ("[F]or claims of ineffective assistance of counsel, [] AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." (cleaned up)).

The Wisconsin Court of Appeals held that Chaney failed to demonstrate a reasonable probability that the verdict would have been different if his counsel had introduced motive for C.H. to lie and objected to various testimony. (ECF No. 7-3 ¶¶11, 24.) The court of appeals explained that there was "overwhelming evidence" of Chaney's guilt, pointing to (1) the testimony from C.H.'s stepfather stating that she called him to say Chaney had shot Prescott; (2) evidence that Chaney did not go to work the day of the shooting, did not collect his paycheck, and was not found for eighteen months; (3) the 911 call where a female voice says, "Oh my God, Wayne;" and (4) O'Day's testimony about his interview with C.H., where she identified Chaney as the shooter. (*Id.* ¶24.) The state court also noted that, although C.H. recanted her initial testimony on the stand, she admitted to texting her mother, "I won't go in there and testify . . . I'm flipping the page here."

(*Id.*) Given this evidence, the appellate court determined that the postconviction court appropriately denied the motion without an evidentiary hearing. (*Id.*) The Court cannot say that this was an unreasonable application of *Strickland*'s prejudice requirement.

Chaney maintains that his counsel was ineffective because he failed to present evidence that C.H. had a motive to lie to police because of their tumultuous relationship, in which Chaney cheated on C.H. and C.H. allegedly stabbed Chaney and broke his car window. (ECF No. 8 at 13.) Chaney also faults his attorney for not objecting to inadmissible hearsay that a supposed shooting witness told another person that "the girl's boyfriend" committed the shooting and an officer's improper testimony that, during the 911 call, a woman asked, "Why did you do that, Wayne." (ECF No. 8 at 14; ECF No. 7-9 at 135; ECF No. 7-3 ¶8.) He maintains that these decisions by counsel prejudiced him because (1) evidence of C.H.'s motive to lie would have caused the jury to "reasonably [] question[] whether [C.H.] wanted to falsely get Chaney . . . locked up . . . after she demonstrated violent propensities and killed Prescott herself;" and (2) the jury could not clearly hear the 911 audio, and without the officer's testimony, "we don't know what the jury would have heard." (ECF No. 8 at 15.) He further maintains that the evidence relied upon by the Wisconsin Court of Appeals is "easily rebutted." (*Id.*)

Chaney's arguments do not warrant the extraordinary remedy of federal habeas relief. With respect to the failure to impeach C.H., the Wisconsin Court of Appeals explained that C.H. had testified favorably to Chaney, telling the jury that someone else had shot Prescott and that she did not recognize the shooter. (ECF No. 7-3 ¶5.) The veracity of her testimony was brought into question by contradictory testimony from both Detective O'Day and her stepfather. (*Id.* ¶¶6–7.) Her credibility was further undermined by text messages sent to her mother concerning her unwillingness to testify against Chaney. (*Id.* ¶5.) Given that C.H. testified *for* Chaney on the stand and her credibility was already attacked by the state, the state court's determination that Chaney was not prejudiced by any further effort to further impeach her by Chaney's own counsel is fully supported in the record. This Court cannot conclude that the state courts unreasonably concluded that there was no substantial likelihood that a jury would acquit Chaney based on this potential additional cross examination of a witness whose testimony otherwise helped him. *See Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

As for Chaney's argument about the 911 call, the Wisconsin Court of Appeals expressly found that, in the 911 call, "a female voice says, 'Oh my God, Wayne.'" (ECF No. 7-3 at ¶8.)

Chaney has not rebutted this finding by clear and convincing evidence and, thus, improper lay testimony that repeats this evidence cannot have prejudiced him, even in a cumulative manner. *See* 28 U.S.C. §2254(e)(1). Beyond stating that his trial counsel failed to object to inadmissible hearsay, Chaney does not explain how that failure prejudiced him. (ECF No. 8 at 14.) Nonetheless, the Wisconsin Court of Appeals found that, even with this evidence thrown out and the cumulative effect of trial counsel's errors, the evidence against Chaney was "overwhelming," and a different result unlikely. (ECF No. 7-1 ¶24.) The Court cannot say that this conclusion was unreasonable. *See Harrington*, 562 U.S. at 101.

Finally, Chaney maintains that the evidence relied upon by the Wisconsin Court of Appeals is "easily rebutted" and "is no evidence of guilt." (ECF No. 8 at 15.) Chaney's argument appears to be that the Wisconsin Court of Appeals incorrectly applied *Strickland*. (*See id.* at 15–16 ("The decision reached by Wisconsin Appellate Courts wrongfully applied the *Strickland* decision.").) But, to achieve federal habeas review, Chaney cannot simply argue that the state court was wrong: he must prove that the Wisconsin Court of Appeals *unreasonably* applied *Strickland*. *See Harrington*, 562 U.S. at 101. He has not met this substantial burden.

In the end, the Wisconsin Court of Appeals reasonably concluded that counsel's failure to present motive for C.H. to lie, failure to object to hearsay, and failure to object to a detective's testimony would not have created a reasonable probability of an acquittal. It emphasized the existing evidence that pointed to Chaney's guilt and, accordingly, did not believe that Chaney's proposed evidence was substantially likely to change the outcome. This is a reasonable analysis under *Strickland*, precluding habeas relief. The court of appeals articulated the correct standard from *Strickland* and then reasonably applied it to Chaney's case. Chaney's habeas challenge for ineffective assistance of counsel therefore fails.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court

declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

**CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Dwayne Chaney's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner. *See Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on April 22, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge